

**U. S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Michael F. Davio*
*Special Assistant United States Attorney*
*Michael.Davio@usdoj.gov*

*Suite 400*
*36 S.Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4985*
*MAIN: 410-209-4800*

March 3, 2021

The Honorable Peter J. Messitte
United States District Judge
6500 Cherrywood Lane
Greenbelt, Maryland 20770

      Re:    *United States v. Patricia Sahadachny*,
               Criminal No. PJM-19-0072

Judge Messitte:

      The Government writes this letter in advance of the Defendant's sentencing, scheduled for Tuesday, March 9, 2021. As set forth more fully below, the Government requests that Court sentence the Defendant to 24 months of incarceration, and that she be ordered to pay restitution in the agreed-upon amount of $256,244.

      I.      Background

      On September 2, 2020, the Defendant pleaded guilty to Count One of the Indictment, which charges her with theft of government property in violation of 18 U.S.C. § 641. Pursuant to the terms of the Plea Agreement the Government has agreed to move at the sentencing hearing to dismiss Count Two, aggravated identity theft. The charges stem from the Defendant's theft, over a period of approximately 24 years, of over $256,000 in Social Security Disability Insurance Benefit payments that the Social Security Administration (SSA) made to the Defendant's deceased son, believing him to be alive. Instead of notifying SSA of her son's death, the Defendant cashed the benefits checks by forging her deceased son's signature, and used them to live much of her adult life at the taxpayers' expense. The payments only stopped when SSA conducted an audit and determined that the Defendant's son was deceased, but was still receiving benefit payments.

      In addition to forging her son's signature to endorse his benefits checks, the Defendant used his social security number to open eleven charge accounts in his name after his death. The Defendant's son's credit report indicates that banks were forced to settle at least four of the accounts for less than the amounts owed.

      Agents of the SSA Office of Inspector General confronted the Defendant during a consensual interview at her home on October 24, 2018. The Defendant admitted that she stole the benefits by forging her son's signature on the checks, and that she knew it was wrong.

II.     Guidelines Calculation

The Government and Defendant stipulate and agree that the Sentencing Guidelines are calculated as follows:

a. This base offense level for Count One, Theft of Government Property, is 6, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a)(2).

b. There is a 12-level increase, pursuant to U.S.S.G. § 2B1.1(b)(1)(G), because the loss involved in the offense was more than $250,000 but less than $550,000.

This results in an offense level subtotal of 18.

There is a 2-level downward adjustment because the Defendant clearly accepted responsibility, and the Government will move at sentencing for an additional 1-level decrease in recognition of the Defendant's timely notification of her intention to plead guilty, pursuant to U.S.S.G. § 3E1.1(b). Thus, the final adjusted offense level is **15**.

The Defendant is in Criminal History Category III, according to the Presentence Investigation and Report (ECF No. 32), ¶ 37. Therefore, the Defendant's sentencing guideline range is **24 to 30 months**.

III.    Section 3553(a) Factors

The Government, in consideration of the Sentencing Guidelines and the factors set forth at 18 U.S.C. § 3553(a) believes that a sentence of 24 months of incarceration is sufficient, but not greater than necessary to accomplish the objectives set forth in 18 U.S.C. § 3553(a). The Government makes this recommendation in consideration of all the "relevant conduct." *See,* U.S.S.G § 1B1.3. This includes not only theft of government property, but aggravated identity theft, as well as bank fraud and false statements made in obtaining credit cards in the Defendant's son's name.

The Seriousness of the Offense

The offense is very serious. The Defendant committed theft for 24 years. Each year was an opportunity for her to come clean, or at a minimum, to stop cashing the benefits checks. Instead, each year was another that she chose to steal from the government money that was intended to help her deceased son. Each month was another that she affirmatively chose to endorse a check that was not intended for her, countersign her deceased son's name, drive to the bank, and deposit it. The Defendant did this nearly 300 times over the course of 24 years, and stole over $250,000.

The funds were not apparently stolen for necessities. While it appears the Defendant spent some of the funds on living expenses, much of it was spent on credit card bills including those in the Defendant's son's name, whose records reflect numerous purchases from television shopping networks, magazine subscriptions, and gifts such as flowers, cookies, and even Omaha Steaks. The funds, however, were *intended* for necessities. The Social Security Disability Insurance program from which the Defendant stole ensures that Americans who have worked

and paid taxes, and find themselves no longer able to work due to injury or other disability are able to make ends meet. In this sense, the Defendant's was not a victimless crime; the fraud of the Defendant and others like her compromises SSA's ability to carry out its mission to provide for those who can't provide for themselves.

### History and Characteristics of the Defendant and the Need to Protect the Public

The Defendant has a demonstrated history of theft and fraud. Though her most recent prior convictions were some time ago, the Defendant committed the instant offense of conviction continuously for 24 years from 1994 until benefit payments were terminated in 2018. The Defendant also opened eleven credit accounts in her deceased son's name beginning 2001 until as recently as 2012. The Defendant has shown a consistent pattern of similar criminal conduct throughout her life, and a sentence of 24 months would serve to protect the public from future crimes of the Defendant.

### The Need to Afford Adequate Deterrence and Promote Respect for the Law

Fraud like the Defendant's drains the agency of resources needed to execute its mission.[1] It is therefore important that the Court impose a sentence that conveys that there will be consequences to stealing from the government, and which will deter similar criminal conduct in the future. Conversely, an inadequate sentence could have the opposite effect. If the Court were to impose an inadequate sentence, a prospective fraudster may consider such a sentence a small price to pay for the chance to abscond with hundreds of thousands of dollars in government money. A sentence of 24 months would serve to afford deterrence to such criminal conduct and promote respect for the law.

IV.  Conclusion

For all of the foregoing reasons, the Government respectfully requests that this Court sentence the Defendant to 24 months of incarceration and enter an order of restitution in the amount of $256,244.

---

[1] Statistics regarding fraud in particular are not publicly available, however according to the SSA Office of Inspector general, in FY 2018, SSA made over $6.6 billion in overpayments, a figure which includes overpayments due to fraud. *Social Security Administration, Fiscal Year 2020 Inspector General's Statement on the Social Security Administration's Major Management and Performance Challenge*s, available at: https://www.ssa.gov/finance/2020/OIG%20Mgmt%20Challenges.pdf

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By: Michael F. Davio
Special Assistant United States Attorney